# CHARLESTON.

L. SCHREIBER & SONS CO. v. THE MILLER SUPPLY CO.

Submitted November 16, 1915. Decided November 23, 1915.

1. PRINCIPAL AND SURETY—*Guaranty—Construction of Contract.*
    The rule, *strictissimi juris,* pertains to the application of contracts of suretyship and guaranty, not the construction thereof. (p. 242).

2. EVIDENCE—*Ambiguous Contract—Parol Evidence—Construction.*
    The interpretation of such contracts is governed by the rules applicable to other contracts and, if ambiguous, the situation, purposes and conduct of the parties and the attendant circumstances may be considered upon the inquiry for their intention, or the meaning of the uncertain terms of the written contract, which is the same thing. (p. 240).

3. PRINCIPAL AND SURETY—*Contract—Debts Covered.*

   A guaranty of a sub-contractor's ''account for material furnished
   for and put into'' a certain building, by the assignee of the com-
   pensation to accrue to the principal contractor for the erection of
   the building, less sufficient sums to meet the pay-rolls for labor,
   read in the light of the relations of the parties and conduct import-
   ing acquiescence in such construction, covers the cost of installation
   of the materials referred to as well as their value.   (p. 237).

Error to Circuit Court, Cabell County.

Action by L. Schreiber & Sons Company against the Miller
Supply Company. Judgment for plaintiff, and defendant
brings error.

*Affirmed.*

*Geo. S. Wallace,* for plaintiff in error.

*Marcum & Shepherd* and *Dawson & McCullough,* for de-
fendant in error.

POFFENBARGER, PRESIDENT:

. The ground of complaint of this judgment for $504.88,
rendered upon a finding of the court, trial by jury having
been waived, is that the defendant's contract of guaranty,
upon which the action is based, does not cover the items for
labor, constituting the claim. The admitted liability for
materials has been discharged by payment of a sufficient
amount to cover the cost thereof.

The real debtor was the Moore Construction Co. That com-
pany, having contracted to erect for the Huntington Masonic
Temple Association, a building called The Huntington
Masonic Temple, entered into a subcontract with the L.
Schreiber & Sons Co., for the installation of certain iron and
steel work in said building, at the price of $4,700.00 for
materials and labor. For some reason not disclosed by the
statement of agreed facts, the Moore Construction Co.
assigned to the Miller Supply Co., all amounts that might
become due to it, under its contract with the Huntington
Masonic Temple Association, except such as should be paid to
the Moore Construction Co., from time to time, upon archi-
tect's estimates for labor. In March 1913, after said assign-
ment, the L. Schreiber & Sons Co., shipped to the Moore Con-

struction Co., a supply of iron and steel, under its contract, but attached a sight draft to the bill of lading. Thereupon the Moore Construction Co. applied to the Miller Supply Co. for relief, and the latter company wrote a letter to the L. Schreiber & Sons Co., dated March 24, 1913, which constitutes the guaranty relied upon. The material portions of that letter read as follows:

"Mr. Moore advises us today that he will not accept the shipment sight draft against bill of lading, as he had a clear understanding with your representative that you were to be paid on estimate as the material was installed in the building. The Contractors desired to satisfy you in this respect and asked us to arrange the matter of settlement direct. We are willing to guarantee the payment of your account for material furnished for and put into the Masonic Temple building to be paid on estimates from time to time as approved by the Architect and the Moore Construction Company; but we are not willing to make any payments for material, which has not been put into the building, as it is not to our interest to do so." The plaintiff was ignorant of the relation constituting the inducement to this offer of a guaranty.

The proposition having been accepted, the shipment of materials was released to the Moore Construction Co. and the L. Schreiber & Sons Co. proceeded with the execution of its contract. On May 21, 1913, the Miller Supply Co. requested a statement showing the balance that would be due from the Moore Construction Co., "for materials furnished for the Masonic Temple building." Thereupon the L. Schreiber & Sons Co. rendered a statement, dated, May 24, 1913, opening with a charge of a balance for merchandise, amounting to $4539.75, on which there were credited two items, one for $22.00 for hoisting and unloading, and the other for $305.00, as "Cash to our man," leaving a balance of $4212.75. This showed no charge for the labor of installing the work in the building. The company claims to have sent another statement, on the same day, opening with a charge of $4700.00 for "Iron work delivered and erected as per contract." To this, were added an item of $18.50 for new material and one for $38.25 for labor in erection, making a total of $4756.75, from which there was deducted the sum of $217.00 for materials

omitted from the contract. This left $4539.75, the amount with which the other statement opened, against which were credited the two items for hoisting and unloading and cash, leaving due the sum of $4212.75, corresponding with the balance shown by the other statement. The defendant denies having received this more elaborate statement, showing the charge for labor. The other statement, the receipt of which is admitted, shows a credit of $305.00, designated as "cash to our man," and a letter to the defendant, bearing the same date, further describes the item, as being an amount "advanced to our erection foremen for current expenses." On December 10, 1913, the plaintiff sent another statement in which all of its charges were designated as merchandise. On February 4, 1914, it sent another made out on the basis of the one it claims to have sent May 23, 1913. On March 18, 1914, the defendant objected to it on the ground of the inclusion of the cost of erection. Between May 23rd and December 10th, a payment of $3132.82 was made which reduced the amount to $1122.38. As shown by a bill of particulars filed after the action was brought, $476.30 of this amount was for labor. This fact having been disclosed, the defendant paid the balance of the claim, $646.80, and interposed the defense of non-liability for the items for labor.

The claim of such degree of certainty and definiteness in the terms of the guaranty, as to exclude the circumstances and conduct of the parties as evidence of the meaning of the words used, or the intent expressed by the written contract, cannot be conceded. They are not clear and definite. The defendant guaranteed the "account" of the plaintiff "for material furnished for and put into" a certain building. It may be fairly inferred that it knew the character of both building and materials. The latter were metal doors, thresholds, stairs, sills for doors and elevators, beams for a balcony and the like. The guaranty, in terms, covers an account for materials furnished for and put into, a building, not merely an account for materials furnished for a building. "Put into" may mean attached or built in by the principal contractor or by the sub-contractor furnishing them. As to which is meant, the letter is silent. While the letter gives a reason for the requirement of installation, saying it would

not be to the interest of the defendant to guarantee the price of materials not put into the building, this explanation does not cover the point in issue, namely, whether the account guaranteed should cover the cost of putting the materials into the building, nor is it inconsistent with an affirmative finding on that issue. It may or may not be evidence to the contrary, according to the purpose for which it was inserted. That purpose is clear and plain. For materials not put into the building, the owner would pay nothing and, as to the cost thereof, the guarantor could not rely upon its assignment of money to become due from the owner. This explanation, therefore, manifestly signifies nothing in the inquiry as to whether the account should include the cost of installation. In as much as the assignment covered all money due on estimates, except enough to meet the contractor's pay-rolls, it was really a matter of no importance to the defendant, at the date of the guaranty, whether the sub-contract included the cost of installation or not. If it did not, that cost would go into the contractor's pay-roll allowances; and, if it did, it would come to the assignee, the guarantor, as a fund out of which it could pay the sub-contractor for the labor as well as the materials, without loss. In this circumstance, a good reason for the looseness of the terms of the guaranty and lack of definition of the words, "put into," may be found. That the sub-contract could have been drawn in either form, the court judicially knows, and the defendant is presumed to have known. Hence it must have known the account it guaranteed might include the cost of materials placed by the sub-contractor, and not merely delivered or deposited in the building. The letter excluded nothing except the cost of materials not put into the building. It neither inquired whether the account would be for materials placed, nor excluded the cost of emplacement by any express words.

In the abstract, an account for materials furnished for a building and put into it, would not necessarily be an account for the value of the materials and of the labor of emplacement, but it could be, and, whether it would be or not, would depend upon the meaning of the terms, "put into." If they meant merely delivered, it would not, but, if they meant, installed, it would. The plaintiff's contract was to furnish

the materials and put them in place for a lump sum, $4,700.00. It contracted, not merely for the price of materials delivered and labor performed, as separate items, but for materials placed, built into the building. That it intended to assent to a splitting of its contract, or a partial guaranty thereof, cannot well be supposed. Nor, if the plaintiff knew the character of the contract, would there be any reason to doubt that it intended to guarantee the whole account. Obviously the contract is an ambiguous one and the circumstances and conduct of the parties may be considered, upon the inquiry for the meaning of its terms.

The defendant had an assignment of the income from the principal contract, less sufficient sums to meet the pay-rolls, and was necessarily paying all bills except those for labor. This brought it into very close relation with everything pertaining to that work and the progress thereof. It was to its interest to see that nothing but the pay-roll allowances were deducted. How it could do so without knowledge of the character of the sub-contracts, is rather difficult to perceive. And it is improbable that, in extending relief to the principal contractor, respecting the materials in question, it made no inquiries as to the nature of the contract. It denies that it did, but a jury would not be bound to accept this statement, in view of its subsequent conduct importing a construction accordant with the plaintiff's contention. It paid that $305.00 for installation work. This is a fair inference from the circumstances. It got all the money except what went into the principal contractor's pay-rolls, and the plaintiff's men were not on those pay-rolls. That item was credited to it on the statement and explained in the letter. Taking credit for it was an implied acknowledgment of liability for cost of installation. That credit never has been objected to and is included in what the plaintiff regards as payment in full. If it did not know what the sub-contract was, when it guaranteed payment, it certainly knew it included labor, when it received the statement and letter of May 23rd. Then having knowledge of a fact from which the charge was necessarily implied, it gave no notice of its alleged construction of the contract. Had it done so, the plaintiff could have taken a mechanics lien for its protection. This silence under circum-

stances imposing duty to speak, is strongly contradictory of the defendant's present position. For more than a month after admitted knowledge of the charges for cost of erection, the defendant made no objection to it. On the face of the statement of February 4, 1914, it was plainly written, and the objection was not made until March 18, 1914. Evidently the amount received by the assignee from the owners was insufficient to pay all of the bills and the correspondence indicates this fact was not known until about the time the new construction was put upon the contract of guaranty. On February 3rd, the defendant asked for a statement saying it was trying to get the building accepted and the balance paid, and, on February 27th, replying to a letter of the 26th, it advised that the building had been accepted, but that it would not be able to pay the balance due the plaintiff until final settlement should be made. About three weeks later, the first objection to the account was made. All these circumstances, a jury could have considered, and the trial court did consider, as showing practical or contemporaneous construction of the contract, reaching back, in probative effect, to its date; and we are unable to say the finding is wrong.

The rule, *strictissimi juris,* governs only in the application of a contract of suretyship or guaranty, after its meaning has been ascertained, and, upon the inquiry for the meaning and intent of the parties, or of the words they have used in the written contract, which is the same thing, the rules of interpretation and construction observed in the interpretation of other contracts, apply. *Wait* v. *Homestead Building Association,* 76 W. Va. 431, 85 S. E. 637; *Colgin* v. *Henley,* 6 Leigh 85; *Hopkins* v. *Richardson,* 9 Gratt. 485; Brandt, Sur. & Guar., sec. 107.

Perceiving no error in the judgment we will affirm it.

*Affirmed.*